UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAFECT CAMPBELL, et al.,

    Plaintiffs,

v.

OBAYASHI CORP., INC., et al.,

    Defendant.

CASE NO. C08-181JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendant Balfour Beatty Rail, Inc.'s ("BBRI") motion for summary judgment (Dkt. # 34). Having considered the motion, all responsive papers, and the arguments made by counsel at oral argument, the court GRANTS the motion for summary judgment as to Plaintiff Danny Crowder. The court will consider BBRI's motion with respect to Plaintiffs Duane Jones and Thurmond E. Young, Jr., by separate order.

## II. BACKGROUND

Plaintiff Danny Crowder, and others, filed a complaint alleging employment discrimination on the basis of race (Dkt. # 1) in connection with the construction of light rail for the Central Puget Sound Regional Transit Authority. The plaintiffs originally filed their complaint in King County Superior Court. BBRI removed the action to this court. (*See* Dkt. # 1.) The complaint has been amended three times. The third amended complaint, as well as

ORDER – 1

1 all earlier complaints, names BBRI as a defendant. (Third Amend. Compl. ("TAC") (Dkt. # 1) ¶ 5.) All of the plaintiffs, who are African American, allege that they were terminated or forced to quit in violation of the Washington Law Against Discrimination, RCW 49.60.010 *et seq*. ("WLAD"). (TAC ¶ 7.) The third amended complaint alleges: "Danny Crowder was employed by defendants Sound Transit and Balfour Beatty at the 6th & Royal Brougham Tunnel site. Mr. Crowder was terminated unlawfully pursuant to RCW 49.60." (TAC ¶ 9.) Mr. Crowder does not allege a hostile work environment or any other employment discrimination claim.

BBRI moves for summary judgment pursuant to Fed. R. Civ. P. 56(c) as to Mr. Crowder. (Mot. (Dkt # 34) at 2.) BBRI argues that summary judgment is appropriate because Mr. Crowder was discharged, along with other construction project employees, due to construction delays caused by a concrete workers' strike. (Mot. at 7-8.) BBRI asserts that this is a legitimate, nondiscriminatory reason for terminating Mr. Crowder's employment, and that Mr. Crowder has not and cannot establish that this reason is a mere pretext for discrimination. (Mot. at 7.) In response, Mr. Crowder argues that summary judgment is premature because there exists a question of material fact as to whether BBRI's asserted reason for discharging Mr. Crowder is a pretext. (Resp. (Dkt. # 37) at 11-12, 14-16). BBRI disputes these claims. (Reply (Dkt. # 46) at 5-9.)

### III. ANALYSIS

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). The moving party bears the initial burden of showing there is no material factual dispute and that he or she is entitled to prevail

ORDER – 2

as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the nonmoving party must present affirmative evidence to demonstrate specific facts showing that there is a genuine issue for trial. *Galen*, 477 F.3d at 657. A mere scintilla of evidence supporting the nonmoving party's position is insufficient to withstand summary judgment. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).

**A.  Washington Law Against Discrimination**

The WLAD prohibits employers from discharging employees on the basis of race. *See* RCW 49.60.180(2). Washington courts apply the *McDonnell Douglas* burden-shifting framework to cases brought under the WLAD, and refer to case law interpreting similar federal employment discrimination statutes as persuasive authority. *Xieng v. Peoples Nat. Bank of Wash.*, 844 P.2d 389, 392 (Wash. 1993); *Grimwood v. Univ. of Puget Sound, Inc.*, 753 P.2d 517, 361-645 (Wash. 1988); *Chen v. Washington*, 937 P.2d 612, 616 (Wash. Ct. App. 1997); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case. In order to make out a claim of discriminatory discharge, the plaintiff must show that he or she (1) belongs in a protected class, (2) was discharged, (3) was doing satisfactory work, and (4) was replaced by someone not in the protected class. *Chen*, 937 P.2d at 616. If the plaintiff establishes a prima facie case, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination. *Id.* If the employer meets its burden of production, the burden returns to the plaintiff to show that the employer's articulated reasons "are unworthy of belief or are a mere pretext for what is, in fact, a discriminatory purpose." *Id.* On summary judgment, the plaintiff's final burden is one of production, not persuasion. *See Jones v. Kitsap County Sanitary Landfill, Inc.*, 803 P.2d 841, 843 (Wash. Ct. App. 1991).

ORDER – 3

1. **Prima Facie Case**

BBRI concedes that Mr. Crowder has established a prima facie case of employment discrimination under the WLAD for purposes of summary judgment. (Mot. at 6.) As a result, the court need not inquire at length into the sufficiency of Mr. Crowder's prima facie case. In brief, Mr. Crowder is African American, i.e., a member of a protected class, he was discharged by BBRI, he was performing satisfactory work, and he was allegedly replaced by Eddy Poblete, who is not African American. The court notes that it is not clear that BBRI actually replaced Mr. Crowder with Mr. Poblete. The evidence suggests that Mr. Poblete had been employed by BBRI for longer than had Mr. Crowder, although he was new to the Seattle job site. (*See* Dancer Decl. (Dkt. # 36) ¶ 6.) The parties have presented no evidence regarding BBRI's policies regarding seniority or layoffs. At oral argument, counsel for BBRI asserted that Mr. Poblete was more senior than Mr. Crowder as to his employment at BBRI. For purposes of summary judgment, however, the court will assume that Mr. Poblete replaced Mr. Crowder within the meaning of the WLAD. Therefore, the court concludes that Mr. Crowder has met his initial burden. *See Chen*, 937 P.2d at 616.

2. **Legitimate, Nondiscriminatory Reason**

In response to Mr. Crowder's prima facie case, BBRI argues that it terminated him because a concrete workers' strike caused construction delays and eliminated the need for his position. (Mot. at 6-7; Dancer Decl. ¶¶ 5-7.) In his declaration, Gary Dancer, the project manner in charge of hiring and firing, states that "Crowder was terminated because of work delays associated with the concrete workers' strike." (Dancer Decl. ¶ 7.) BBRI states that it terminated all but four of its employees on the construction team. (Dancer Decl. ¶ 6.) The remaining employees consisted of "the project foreman, who is Caucasian; a welder who is Caucasian; an African-American man named Willie Smith; and Eddy Poblete, who is

ORDER – 4

Filipino." (Dancer Decl. ¶ 6.) At oral argument, counsel for BBRI stated that, of the four employees terminated, three were Caucasian and one was African American. BBRI argues that the concrete workers' strike constitutes a legitimate, nondiscriminatory reason for the termination. (Mot. at 8.) Additionally, BBRI asserts that the racial composition of the remaining employees demonstrates that Mr. Crowder was not terminated on the basis of race. (Mot. at 4.)

BBRI has satisfied its burden of production in presenting a legitimate, nondiscriminatory reason for terminating Mr. Crowder. The delays caused by the concrete workers' strike represent a legitimate, nondiscriminatory reason for BBRI's decision to discharge Mr. Crowder. *See Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 660-61 (9th Cir. 2002) (holding that a seasonal downturn is a legitimate, nondiscriminatory reason); *Grosz v. Boeing Co.*, 455 F. Supp.2d 1033, 1041 (C.D. Cal. 2006) (holding that a reduction in force is a legitimate, nondiscriminatory reason). Mr. Dancer's declaration is sufficient evidence in support of BBRI's asserted reason for the discharge. Furthermore, the mixed racial composition of BBRI's construction team after the termination of Mr. Crowder's employment lends some support to BBRI's claim that it was motivated by a legitimate, nondiscriminatory reason. *Cf. Furnco Const. Corp. v. Waters*, 438 U.S. 567, 580 (1978). Because BBRI has established a legitimate, nondiscriminatory reason for the discharge, the presumption of discrimination falls away.

**3. Pretext**

The burden returns to Mr. Crowder to show that BBRI's articulated reason is a pretext for discrimination. *See Chen*, 937 P.2d at 616. To show that an employer's articulated reasons are a pretext, the plaintiff may present evidence that "(1) the employer's reasons have no basis in fact; or (2) even if the reasons are based on fact, the employer was not motivated

ORDER – 5

by the reasons; or (3) the reasons are insufficient to motivate the adverse employment decision." *Chen*, 937 P.2d at 616. The plaintiff need not produce direct evidence of discrimination or reveal a so-called 'smoking gun.' *See Sellsted v. Washington Mut. Sav. Bank*, 851 P.2d 716, 721 (Wash. Ct. App. 1993). Rather, the plaintiff can meet his or her burden with circumstantial, indirect, or inferential evidence. *Id.* At a minimum, however, the plaintiff must establish "specific and material facts to support each element of his or her prima facie case." *Chen*, 937 P.2d at 616.

On summary judgment, the plaintiff must meet his or her burden of production by demonstrating the existence of an issue of material fact as to whether the employer's articulated reason is a pretext. *See Jones*, 803 P.2d at 843; *cf. Carle v. McChord Credit Union*, 827 P.2d 1070, 1077 (Wash. Ct. App. 1992). In essence, the "requirement that [the plaintiff] show that the employer's reason was a pretext simply adds a fifth element to the prima facie case of discrimination." *Jones*, 803 P.2d at 843. In many cases, "summary judgment in favor of the employer in discrimination cases is often inappropriate because the evidence will generally 'contain reasonable but competing inferences of both discrimination and nondiscrimination' that must be resolved by a jury." *Kuyper v. State*, 904 P.2d 793, 797 (Wash. Ct. App. 1995) (*citing Carle*, 827 P.2d at 1077). Nonetheless, a plaintiff must show "a nexus between her evidence and an adverse employment action" in order to raise an issue as to pretext. *Kuyper*, 904 P.2d at 797. If a plaintiff "has produced no evidence from which a reasonable jury could infer that an employer's decision was motivated by an intent to discriminate, summary judgment is entirely proper." *Id.*

Mr. Crowder submits two declarations: his own declaration (Dkt. # 44) and the declaration of Alan Harris, a Caucasian co-worker (Dkt. # 43). In Mr. Crowder's declaration, he states: (1) his Caucasian co-workers excluded him (Crowder Decl. ¶¶ 5, 6); (2) his

ORDER – 6

foreperson called him derogatory names, including "boy" and "faggot," and yelled at him on a regular basis (Crowder Decl. ¶¶ 8, 9, 10); (3) his Caucasian co-workers called him names like "pussy fuck" (Crowder Decl. ¶ 12); (4) his Caucasian co-workers used the term "nigger" in his presence, although not in referring to him (Crowder Decl. ¶ 15); and (5) his replacement, Mr. Poblete, appeared to have "no experience" and had to be trained by Mr. Crowder (Crowder Decl. ¶ 17). Similarly, in Mr. Harris' declaration, Mr. Harris states: (1) there was "racial tension" on the job site (Harris Decl. ¶¶ 8, 9); (2) the foreperson asked him whether he was a "nigger lover" after learning that Mr. Harris had given Mr. Crowder a ride to work (Harris Decl. ¶ 20); (3) Mr. Dancer's "response was to just laugh" when Mr. Harris reported that the foreperson was racist (Harris Decl. ¶ 21); (4) Mr. Crowder's replacement was "not experienced" and "looked white" (Harris Decl. ¶ 22, 23); (5) the concrete workers' strike slowed work but "there was still work to do" (Harris Decl. ¶ 26); and (6) the foreperson referred to Mr. Crowder as a "nigger" when Mr. Harris went to pick up his final check (Harris Decl. ¶ 27). Neither declaration states that Mr. Dancer was at the construction site on a regular basis or that he observed any of the alleged discriminatory behavior of Mr. Crowder's foreperson or co-workers.

Viewed in the light most favorable to Mr. Crowder, the evidence is insufficient to show the existence of an issue of a material fact as to whether BBRI's articulated reason for discharging Mr. Crowder is a pretext. Specifically, Mr. Crowder has failed to establish a nexus between the alleged discriminatory treatment by his foreperson and co-workers and BBRI's decision to terminate his employment. *See Kuyper*, 904 P.2d at 797.

As a preliminary consideration, Mr. Crowder acknowledges the fact of the concrete workers' strike and that it caused delays to the construction project. (Resp. at 16; *see* Harris Decl. ¶ 26.) He presents evidence, however, that there was "still work to do." (Harris Decl. ¶

ORDER – 7

26.) BBRI confirms Mr. Harris' assertion that the concrete workers' strike did not halt all work because BBRI retained four employees, including a new employee to the construction project who had arrived after Mr. Crowder and Mr. Harris were hired, while discharging four other employees. (Dancer Decl. ¶ 4.) In theory, it appears that BBRI could have retained Mr. Crowder instead of Mr. Poblete. Without more, the fact that BBRI chose to discharge Mr. Crowder, along with three other employees, instead of Mr. Poblete is insufficient to rebut BBRI's articulated legitimate, nondiscriminatory reason for the discharge.

Mr. Crowder attempts to meet his burden of production with evidence that his foreperson and co-workers treated him in a hostile and racist manner. The declarations of Mr. Crowder and Mr. Harris are sufficient to establish for purposes of summary judgment that Mr. Crowder's foreperson and co-workers excluded him and used racial epithets and other offensive terms. This evidence raises substantial questions as to the conduct of Mr. Crowder's foreperson and his co-workers, but it does not touch on the issue of whether BBRI, through the actions of its decision-maker, Mr. Dancer, was motivated by discriminatory intent when it discharged Mr. Crowder. Mr. Crowder does not allege that his foreperson or his co-workers had any control or influence over the decision-making process.

The only alleged connection between Mr. Dancer and the discriminatory actions of Mr. Crowder's foreperson and co-workers is Mr. Harris' statement that he told Mr. Dancer that the foreperson was racist and Mr. Dancer's response "was to just laugh." (Harris Decl. ¶ 21.) Assuming Mr. Harris' recollection is accurate, this evidence is too attenuated to raise an issue of material fact as to whether Mr. Dancer acted with discriminatory intent. Mr. Crowder does not present any evidence to suggest that Mr. Dancer participated in any discriminatory behavior or was present when the incidents took place. The burden of production rests with Mr. Crowder to show specific and material facts to suggest pretext. At

ORDER – 8

most, Mr. Crowder has demonstrated a potentially hostile working environment, not that his discharge was motivated by discriminatory animus. This generalized showing, even if taken as true, cannot substitute for a showing of pretext when there is no connection between the indignities suffered by Mr. Crowder and the decision-making process that resulted in his discharge.

Furthermore, Mr. Crowder does not contest that BBRI discharged three other employees at the same time and for the same articulated reason that it discharged him. (Dancer Decl. ¶¶ 4, 6.) The court notes that there appears to be some confusion or error in the record regarding the racial composition of the original eight-member construction team. Mr. Dancer states that Mr. Crowder joined a group of employees, including "two other African American men" when hired (Dancer Decl. ¶ 4), while Mr. Crowder states that there was only one other African American employee (Crowder Decl. ¶¶ 7, 13). In its pleadings, BBRI asserts that Mr. Crowder "was the only African American laid off," and states that only a single African American employee remained after the layoffs. (Reply at 5-6.) At oral argument, counsel for BBRI confirmed that BBRI discharged three Caucasian workers in addition to Mr. Crowder. In any event, the fact that similarly situated workers, including either two or three non-African American employees, were discharged by BBRI at the same time as Mr. Crowder and for the same asserted reason functions to cut against a showing of pretext. *See Snead v. Metro. Prop. & Cas. Ins. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001). Similarly, the fact that the resulting four-person workforce included Mr. Smith, an African American employee, diminishes any showing of pretext.

The parties dispute Mr. Poblete's level of experience. Mr. Dancer states that Mr. Poblete was an "extremely experienced railroader" who was brought in from another BBRI project (Dancer Decl. ¶ 6), while Mr. Crowder describes him as having "no experience"

ORDER – 9

(Crowder Decl. ¶ 17) and Mr. Harris states that he "was definitely not experienced" (Harris Decl. ¶ 23). An employer's decision to discharge an employee whose qualifications were clearly superior to an employee not discharged may be evidence of pretext. *Cf. Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1492 (9th Cir. 1995). However, an employee's subjective opinions as to competence do not raise a genuine issue of material fact. *Cf. Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996). Mr. Crowder's and Mr. Harris' assertions regarding Mr. Poblete's level of experience are subjective opinions with no foundation in Mr. Poblete's actual employment history or experience level. These opinions do not give rise to a genuine issue of material fact.

At oral argument, counsel for Mr. Crowder argued that the totality of the circumstances at the BBRI construction site gives rise to the inference that Mr. Dancer was aware of the alleged discriminatory treatment and thus that a genuine question of fact arises as to whether he was motivated by discriminatory intent when he discharged Mr. Crowder. The court acknowledges its responsibility to consider the evidence as a whole instead of in individual parts. Nonetheless, the court must analyze the evidence as it pertains to specific legal issues. A plaintiff may not survive summary judgment on a discriminatory discharge claim after the defendant has met its burden in establishing a legitimate, nondiscriminatory reason by showing that a genuine issue of material fact exists as to whether generalized acts of discrimination took place at the job site. Mr. Crowder has presented insufficient evidence to connect Mr. Dancer to the alleged discriminatory acts at the construction site.

On the whole, Mr. Crowder has not satisfied his burden of production in demonstrating a genuine issue of material fact as to pretext. Although the court recognizes the severity of the alleged hardships suffered by Mr. Crowder, the evidence presented by Mr. Crowder fails to allege a sufficient nexus between Mr. Dancer's decision to terminate Mr.

ORDER – 10

Crowder's employment and a discriminatory intent. As a result, the court concludes that summary judgment, pursuant to Fed. R. Civ. P. 56(c), is appropriate.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS the motion for summary judgment as to Plaintiff Danny Crowder.

Dated this 24th day of November, 2008.

JAMES L. ROBART
United States District Judge

ORDER – 11