UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LAFECT CAMPBELL, et al.,

   Plaintiffs,

   v.

OBAYASHI CORP., INC., et al.,

   Defendants.

CASE NO. C08-181JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendant Obayashi Corporation Inc.'s ("Obayashi") motion for summary judgment (Dkt. # 92), Plaintiff Lafect Campbell's counter-motion for summary judgment (Dkt. # 114), and Plaintiffs Donald J. Mills, Jr. and Cornell Tunney's counter-motion for summary judgment (Dkt. # 125). The court finds oral argument unnecessary. Having considered the motions and all responsive pleadings, for the following reasons, the court GRANTS Obayashi's motion for summary judgment (Dkt. # 92), DENIES Mr. Campbell's counter-motion for summary judgment (Dkt. # 114), and DENIES Mr. Mills and Mr. Tunney's counter-motion for summary judgment (Dkt. # 125).

## II. BACKGROUND

Plaintiffs William Brown, Lafect Campbell, Edwin Kyles, Donald Mills, Jr., and Cornell Tunney allege that they were hired by Obayashi in connection with the construction

ORDER – 1

of light rail for the Central Puget Sound Regional Transit Authority and subsequently terminated or forced to quit in violation of the Washington Law Against Discrimination ("WLAD"), RCW 49.60.010 *et seq.*, on the basis of race. (Third Amended Complaint ("3d Am. Compl.") (Dkt. # 1) ¶¶ 6-8, 12-14.) Specifically, they each allege that they were "terminated unlawfully pursuant to RCW 49.60" and that Obayashi "perpetrated a pattern of discrimination whereby plaintiffs were not provided appropriate equipment, were not provided appropriate clothing, were not provided specific tasks to perform at their worksites and were then abruptly terminated." (*Id*. ¶¶ 6-8, 12-14, 20.) Plaintiffs are all African American men. (*Id*. ¶ 6.) Plaintiffs originally filed their complaint in King County Superior Court. The case was removed to this court based on diversity jurisdiction. (*See* Dkt. # 1.)

On January 23, 2009, the court granted Plaintiffs' counsel's motion to withdraw from representation in this case. (*See* Dkt. # 74.) The court struck the trial date in order to allow Plaintiffs additional time to obtain new counsel. Plaintiffs have not retained new counsel and are proceeding pro se.[1]

On March 4, 2009, Obayashi filed a motion for summary judgment (Dkt. # 92) requesting that the court dismiss Plaintiffs' claims. Mr. Campbell, Mr. Mills, and Mr. Tunney requested additional time to respond to Obayashi's motion for summary judgment (Dkt. # 106, 107, 108), and the court extended Plaintiffs' deadline to respond to April 20, 2009 (Dkt. # 109). On April 16, 2009, in response to Obayashi's motion for summary judgment, Mr. Campbell filed a counter-motion for summary judgment (Dkt. # 114). On

---

[1] Plaintiffs have received at least some so-called assistance from Mr. Rob Lear, a non-attorney and a non-party, in presenting their claims and defenses. (*See* Dkt. ## 127, 127-3.) Obayashi objects to Mr. Lear's participation. (Dkt. # 128) The court will resolve the issue of Mr. Lear's involvement in this case by separate order.

ORDER – 2

April 19, 2009, also in response to Obayashi's motion for summary judgment, Mr. Mills and Mr. Tunney filed a counter-motion for summary judgment (Dkt. # 125).

### III.  ANALYSIS

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007). "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing there is no material factual dispute and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the nonmoving party must present affirmative evidence to demonstrate specific facts showing that there is a genuine issue for trial. *Galen*, 477 F.3d at 657. A mere scintilla of evidence supporting the nonmoving party's position is insufficient to withstand summary judgment. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).

**A.  Pro Se Parties**

As a preliminary matter, the court acknowledges that Plaintiffs are proceeding pro se after their attorney withdrew from representation. (*See* Dkt. ## 68, 74.) Plaintiffs correctly assert that a pro se plaintiff is entitled to wider latitude. (Campbell Mot. (Dkt. # 114) at 9; Mills & Tunney Mot. (Dkt. # 125) at 2.) Plaintiffs err, however, in assuming that this general consideration lifts their burden to establish all of the elements of a prima facie case, as discussed below. (*See id.*) In reviewing the instant motions, the court is mindful that

ORDER – 3

1 Plaintiffs are not trained in the law but will nonetheless hold Plaintiffs to their burdens under
2 the WLAD.

**B.    Obayashi's Motion to Strike**

In its reply, Obayashi requests that the court strike portions of the counter-motions and attached declarations and exhibits filed by Mr. Campbell, Mr. Mills, and Mr. Tunney. (Reply (Dkt. # 118) at 16-18.)  First, the court declines to strike Mr. Campbell's declaration in whole on the ground that he failed to sign it as required by Federal Rule of Civil Procedure 11(a).  While Mr. Campbell is required to sign all papers filed with the court, the court notes that Mr. Campbell is a pro se party untrained in the law, that he signed his counter-motion, and that he has not been given an opportunity to correct the omission. Second, the court strikes exhibits 1-3 attached to Mr. Campbell's declaration and exhibits 1-3 of Mr. Mills and Mr. Tunney's declaration as unauthenticated.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).  Third, the court strikes those portions of Mr. Campbell's and Mr. Mills and Mr. Tunney's counter-motions that contain unsupported and inadmissible statements.  The court will not accept unsupported statements made in the counter-motions as evidence in support of or in opposition to summary judgment.

**C.    Washington Law Against Discrimination**

The WLAD prohibits employers from discharging employees on the basis of race. *See* RCW 49.60.180(2). Washington courts apply the *McDonnell Douglas* burden-shifting framework to cases brought under the WLAD, and refer to case law interpreting similar federal employment discrimination statutes as persuasive authority. *Xieng v. Peoples Nat. Bank of Wash.*, 844 P.2d 389, 392 (Wash. 1993); *Grimwood v. Univ. of Puget Sound, Inc.*,

ORDER – 4

753 P.2d 517, 361-645 (Wash. 1988); *Chen v. Washington*, 937 P.2d 612, 616 (Wash. Ct. App. 1997); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a prima facie case. In order to make out a claim of discriminatory discharge, the plaintiff must show that he or she (1) belongs in a protected class, (2) was discharged, (3) was doing satisfactory work, and (4) was replaced by someone not in the protected class. *Chen*, 937 P.2d at 616. If the plaintiff establishes a prima facie case, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the termination. *Id.* If the employer meets its burden of production, the burden returns to the plaintiff to show that the employer's articulated reasons "are unworthy of belief or are a mere pretext for what is, in fact, a discriminatory purpose." *Id.* On summary judgment, the plaintiff's final burden is one of production, not persuasion. *See Jones v. Kitsap County Sanitary Landfill, Inc.*, 803 P.2d 841, 843 (Wash. Ct. App. 1991).

Similarly, to establish a prima facie case of discrimination on the basis of disparate treatment, a plaintiff must show that he or she (1) belongs in a protected class, (2) was treated less favorably in the terms or conditions of his or her employment (3) than a similarly situated employee not in a protected class, and (4) he or she and the non-protected comparator were doing substantially the same work. *Washington v. Boeing Co.*, 19 P.3d 1041, 1048-49 (Wash Ct. App. 2000); *Johnson v. Dep't of Social & Health Servs.*, 907 P.2d 1223, 1231-32 (Wash. Ct. App. 1996).

**D.     Plaintiffs William Brown and Edwin Kyles**

Mr. Brown and Mr. Kyles did not respond to Obayashi's motion for summary judgment. Local Rules W.D. Wash. CR 7(b)(2) provides that "[i]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that

ORDER – 5

the motion has merit." The court concludes that Mr. Brown's and Mr. Kyles's failure to respond constitutes an admission that Obayashi's motion has merit with respect to their respective claims under the WLAD. Furthermore, having failed to respond, neither Mr. Brown nor Mr. Kyles have submitted arguments or evidence in support of a prima facie case of discrimination under the WLAD. Therefore, the court grants Obayashi's motion for summary judgment with respect to Mr. Brown and Mr. Kyles because they have not met their respective burdens in establishing prima facie cases.

**E.     Plaintiff Lafect Campbell**

    i.   Obayashi's Motion for Summary Judgment

In its motion for summary judgment, Obayashi argues that it terminated Mr. Campbell for non-mining related performance issues. (Mot. (Dkt. # 92) at 6.) Specifically, Obayashi alleges that Mr. Campbell (1) violated his light duty restrictions after injuring his left wrist (Declaration of William Hahn ("Hahn Decl.") (Dkt. # 93) ¶ 9), (2) failed to follow company policy by reporting for duty at times when he was not scheduled, even after being instructed not to do so (*id.* ¶ 10), (3) failed to return in a timely manner from doctor's appointments and left early before shift changes (*id*. ¶¶12-13), and (4) engaged in adverse interactions with staff, excessive and inappropriate use of the telephone, and missed appointments at Healthforce Occupational Medicine (*id*. ¶ 11; Declaration of Laurie Johnston ("Johnston Decl.") (Dkt. # 98-3), Ex. 19). Obayashi disciplined Mr. Campbell twice. (Johnston Decl., Exs. 21-22.) Obayashi asserts that Mr. Campbell has not satisfied his burden to establish a prima facie case of discrimination under the WLAD. (Mot. at 19-25.)

      1.   Prima Facie Case - Discriminatory Discharge

Mr. Campbell has not satisfied his burden in establishing a prima facie case of discriminatory discharge under the WLAD. Mr. Campbell has not demonstrated that he was

performing satisfactory work. In his counter-motion, Mr. Campbell contends that "Defendant does not dispute that Plaintiff was doing satisfactory work." (Campbell Mot. at 2.) This is incorrect. Obayashi clearly alleges that Mr. Campbell did not meet performance standards (Mot. at 20-21; *see* Hahn Decl. ¶¶ 8-14) and it disciplined Mr. Campbell on two occasions (Johnston Decl., Exs. 21-22.) Mr. Campbell appears to believe that he necessarily was performing satisfactory work because Obayashi alleges it terminated him for "non-mining related performance issues." (Campbell Mot. at 2.) The court declines to accept this argument. Even assuming Mr. Campbell was performing satisfactory mining-related work, it does not follow that he was "doing satisfactory work" within the meaning of the WLAD. An employee who does not meet applicable non-mining-related standards of employee conduct is not performing satisfactory work. In any event, the burden rests squarely with Mr. Campbell, not Obayashi, to establish that he was doing satisfactory work. Mr. Campbell's misplaced assertion that Obayashi does not dispute that he was performing satisfactory work is insufficient, without more, to carry his burden. Mr. Campbell also argues that the evidence submitted by Obayashi supports his case. (Campbell Mot. at 3.) Having reviewed the evidence submitted by Obayashi, the court cannot identify any evidence to support this element of Mr. Campbell's claim; rather, the evidence submitted by Obayashi includes two disciplinary forms, which do not support Mr. Campbell's assertion that he was performing satisfactory work. (Johnston Decl, Exs. 21-22.) Further, none of the exhibits submitted by Mr. Campbell in support of his counter-motion address this element. Therefore, viewing the evidence in the light most favorable to Mr. Campbell, the court grants summary judgment in favor of Obayashi with respect to Mr. Campbell's discriminatory discharge claim because Mr. Campbell has not established a prima facie case under the WLAD.

2. Prima Facie Case - Disparate Treatment

Mr. Campbell has not satisfied his burden in establishing a prima facie case of disparate treatment under the WLAD. In fact, a review of Mr. Campbell's counter-motion casts doubt on whether he continues to maintain such a claim.[2] Rather, Mr. Campbell focuses exclusively on the discriminatory discharge standard and presents no direct analysis of or evidence regarding the terms and conditions of his employment. Nonetheless, even if Mr. Campbell alleges such a claim, he has not made out a prima facie case. He presents no evidence that he was treated less favorably in the terms and conditions of his employment than a similarly-situated non-protected employee nor has he shown that he was performing substantially the same work as the comparator. *See Boeing Co.*, 19 P.3d at 1048. Mr. Campbell simply does not address the elements of a disparate treatment claim in a coherent manner.[3] Therefore, the court grants summary judgment in favor of Obayashi with respect to Mr. Campbell's disparate treatment claim because Mr. Campbell has not established a prima facie case under the WLAD.

      ii.      Mr. Campbell's Counter-Motion for Summary Judgment

In his counter-motion, Mr. Campbell requests that the court grant summary judgment in his favor. (Campbell Mot. at 10.) Having reviewed the merits of Mr. Campbell's counter-motion, the court concludes that summary judgment in favor of Mr. Campbell is

---

[2] In the third amended complaint, Plaintiffs allege that Obayashi "perpetrated a pattern of discrimination whereby plaintiffs were not provided appropriate equipment, were not provided appropriate clothing, were not provided specific tasks to perform at their work sites and were then abruptly terminated." (3d Am. Compl. ¶ 20.) This allegation suggests that Plaintiffs are also pursuing disparate treatment claims.

[3] The court has reviewed Mr. Campbell's counter-motion in depth. Mr. Campbell's counter-motion is not a model of clarity. In it, Mr. Campbell indulges in extensive hypothetical questions and inflammatory language. This approach confuses rather than sharpens the issues for determination by the court. To the extent Mr. Campbell's arguments are not reasonably discernable in his counter-motion, the court declines to cobble together Mr. Campbell's arguments on his behalf and comb the record in search of a reason to deny summary judgment. *See Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029-31 (9th Cir. 2001).

ORDER – 8

inappropriate because he has failed to make out a prima facie claim of discrimination. Therefore, the court denies Mr. Campbell's counter-motion for summary judgment. The court also denies Mr. Campbell's request for appointment of counsel. (Campbell Mot. at 10.) Mr. Campbell has not met the high burden in demonstrating that appointment of counsel is appropriate.

### F. Plaintiff Donald J. Mills, Jr.

    i.    Obayashi's Motion for Summary Judgment

In its motion for summary judgment, Obayashi argues that it did not terminate Mr. Mills but rather that he voluntarily quit. (Declaration of Gege Kinney ("Kinney Decl.") (Dkt. # 95) ¶ 6.) Obayashi explains that Mr. Mills was originally hired on March 20, 2006, was issued safety equipment and fitted for a respirator (Hahn Decl. ¶ 18), subsequently separated from Obayashi (Declaration of Jon Kirk (Dkt. # 96) ¶ 3), filed a complaint alleging racism and "good ol'boyism" (*id.* ¶ 3), was re-hired on May 1, 2006, after Obayashi conducted an inconclusive investigation (*id.* ¶¶ 4-8), and was assigned to a different supervisor (*id.* ¶ 8). Obayashi alleges that when the union re-dispatched Mr. Mills, it included an incorrect rate of pay on the dispatch slip. (Kinney Decl. ¶ 3.) Mr. Mills discovered the error and asked Gege Kinney, the office manager for Obayashi's administrative office at the project site, to correct the rate. (*Id.* ¶ 4.) Mr. Mills allegedly again telephoned Obayashi's administrative office to ask whether his rate of pay had been increased, and requested that the increase be applied retroactively. (*Id.* at 5.) Ms. Kinney states that, after obtaining approval to apply the correct rate of pay retroactively, she attempted to contact Mr. Mills on several occasions. (*Id.* at 6.) She states that she finally reached him at home on a day she knew Mr. Mills was scheduled to work. (*Id.*) Ms. Kinney

ORDER – 9

states that she asked Mr. Mills whether he was sick; he responded "no." (*Id.*) She then "asked Mills if he quit, and Mills said 'yes.'" (*Id.*)

### 1. Prima Facie Case - Discriminatory Discharge

Obayashi argues that summary judgment is appropriate because Mr. Mills allegedly has not established a prima facie case of discrimination. Specifically, Obayashi contends that Mr. Mills has not shown that he was discharged, that he was performing satisfactory work, or that he was replaced by someone not in the protected class. (Mot. at 19-22.)

Obayashi asserts that Mr. Mills has not shown that he was either discharged or constructively discharged because he allegedly voluntarily quit. (Mot. at 19-20; Reply at 5-7.) Mr. Mills agrees that he quit and was not terminated by Obayashi. (Mills & Tunney Mot. at 6; Declaration of Donald J. Mills Jr & Cornell Tunney ("Mills & Tunney Decl.") (Dkt. # 125-2), Ex. 4.) He alleges, however, that he was constructively discharged. (Mills & Tunney Mot. at 6.) In his counter-motion, Mr. Mills contends that "the environment was increasingly hostile after Mills was rehired, his co-workers refused to work with him and threatened him with bodily harm, he was put in a dangerous position without adequate training, loaders were deliberately filling in his work area without warning, there were problems involving issuance of tools and equipment, there was an explosion near Mills in one instance, another explosion directly above the honey bucket while Mills was using it in another instance, and there finally there was a problem with his pay." (*Id.*) In support of these allegations, Mr. Mills submits selected portions of his deposition transcript. (*See* Mills & Tunney Decl., Ex. 4.)

An employee's decision to resign is presumed voluntary unless the employee can introduce evidence to rebut that presumption. *Boeing Co.*, 19 P.3d at 1049. "To establish constructive discharge, the employee must show: (1) a deliberate act by the employer that

ORDER – 10

made his working conditions so intolerable that a reasonable person would have felt compelled to resign; and (2) that he or she resigned because of the conditions and not for some other reason." *Id.* The "intolerable" element requires the employee to show aggravated circumstances or a continuous pattern of discriminatory treatment. *Id.*; *see Sneed v. Barna*, 912 P.2d 1035, 1039 (Wash. Ct. App. 1996). The basic inquiry is "whether 'working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Boeing Co.*, 19 P.3d at 1049 (quoting *Stork v. Int'l Bazaar Inc.*, 774 P.2d 11, 29 (1989).)

On this record, even construing the evidence in the light most favorable to Mr. Mills, the court cannot conclude that a reasonable person would find Mr. Mills's working conditions so intolerable that he felt compelled to resign. Mistakes regarding Mr. Mills's rate of pay, which were corrected, his conflict with a co-worker, and two explosions at the work site, which Mr. Mills does not allege were intentional or directed at him, do not demonstrate working conditions so difficult or unpleasant that a reasonable person in Mr. Mills's shoes would have felt compelled to resign. He has presented no evidence regarding problems with the issuance of tools, co-workers refusing to work with him, and loaders filling in his area without warning. The court thus concludes that Mr. Mills has not demonstrated either termination or constructive discharge. Therefore, viewing the evidence in the light most favorable to Mr. Mills, the court grants summary judgment in favor of Obayashi with respect to Mr. Mills's discriminatory discharge claim because Mr. Mills has not established a prima facie case under the WLAD.

          2.      Prima Facie Case, Letitimate, Non-Discriminatory Reason, & Pretext - Disparate Treatment

Assuming *arguendo* that Mr. Mills could establish a prima facie case of disparate treatment under the WLAD in connection with Obayashi paying him at a lesser, incorrect

ORDER – 11

rate of pay[4], the court concludes that Mr. Mills has not met his burden in showing that Obayashi's articulated legitimate, nondiscriminatory reason for the discrepancy is a pretext for discrimination. The burden shifts to Obayashi to establish a legitimate, nondiscriminatory reason for its alleged discriminatory disparate treatment of Mr. Mills. *Riehl v. Foodmaker, Inc.*, 94 P.3d 930, 937 (Wash. 2004). Obayashi has met its burden of production. It states that it paid Mr. Mills at an incorrect rate of pay as a result of the fact that the union had re-dispatched Mr. Mills with the incorrect rate of pay on the dispatch slip. (Kinney Decl. ¶ 3.) Obayashi took steps to correct this mistake when Mr. Mills brought the discrepancy to its attention. (*Id.* ¶¶ 5-6.) Although Obayashi could have acted in a more proactive manner to address the retroactive pay issue, the court is satisfied that Obayashi has articulated a legitimate, nondiscriminatory reason for initially paying Mr. Mills at a lower rate of pay, *i.e.*, an error on the union dispatch slip.

The burden ultimately returns to Mr. Mills to establish that Obayashi's alleged legitimate, nondiscriminatory reason for paying him at a lower rate of pay is a pretext. *Kuyper v. State*, 904 P.2d 793, 736 (Wash. Ct. App. 1995). A plaintiff must present evidence that the articulated reason for the employment decision or disparate treatment is unworthy of belief. *Id.* at 738. A plaintiff may accomplish this burden by showing that the reason has no basis in fact, that it was not a motivating factor for the treatment, or that the

---

[4] Like Mr. Campbell, Mr. Mills does not articulate a clear argument regarding disparate treatment. First, despite one allusion to "problems involving the issuance of tools and equipment," Mr. Mills does not present any evidence in support of this claim. (Mills & Tunney Mot. at 6.) Second, by contrast, the parties agree that upon being re-hired Mr. Mills was not paid at the correct rate of pay. (Mills & Tunney Mot. at 6; Mot. at 12.) An employee's rate of pay is a "term or condition" of employment. Therefore, viewed in the light most favorable to Mr. Mills, the court concludes that he has met his initial burden in showing that he was treated less favorably in the terms and conditions of his employment by being paid less than the appropriate amount for his work. *Boeing Co.*, 19 P.3d at 1048-49. The court expresses doubt, however, as to whether he has satisfied the final elements of a prima facie case.

ORDER – 12

reason is insufficient to motivate the treatment. *See id.* at 738-39. Here, although Mr. Mills recites the language of the appropriate legal standard, he offers no corresponding analysis or supporting evidence that Obayashi's articulated legitimate, nondiscriminatory reason is unworthy of belief. Therefore, viewing the evidence in the light most favorable to Mr. Mills, the court grants summary judgment in favor of Obayashi with respect to Mr. Mills's disparate treatment claim because Mr. Mills has not met his burden of production in showing pretext.

*ii. Mr. Mills's Counter-Motion for Summary Judgment*

In his counter-motion, Mr. Mills requests that the court grant summary judgment in his favor. (Mills & Tunney Mot. at 1, 11.) Mr. Mill presents no substantive legal or factual analysis in support of this request. As discussed above, the court finds that Mr. Mills has not met his burden. Therefore, the court denies Mr. Mills's counter-motion for summary judgment.

**G. Plaintiff Cornell Tunney**

*i. Obayashi's Motion for Summary Judgment*

In its motion for summary judgment, Obayashi argues that it terminated Mr. Tunney because he was unable to perform the job requirements. (Declaration of Nathan Jaquez (Dkt. # 94) ¶ 11; Johnston Decl., Ex. 25.) The termination notice for Mr. Tunney states that Obayashi terminated him because he was "not qualified for job requirements." (Johnston Decl., Ex. 25.)

1. Prima Facie Case - Discriminatory Discharge

Obayashi argues that summary judgment is appropriate because Mr. Tunney allegedly has not established a prima facie case of discrimination. (Mot. at 9-10.) Specifically, Obayashi contends that Mr. Tunney was not performing satisfactory work and that he has not

ORDER – 13

shown that he was replaced by someone not in the protected class.  In response, Mr. Tunney contends that there is a genuine issue of material fact regarding his discharge.  (Mills & Tunney Mot. at 3.)  Mr. Tunney argues that while Mr. Mills believed Mr. Tunney "had more experience than anyone," he had never used the equipment used on the project, which was "unique and unfamiliar" to him.  (*Id*.)  The allegation that Mr. Mills believes Mr. Tunney to have had more experience than anyone is unsupported in the record, and the court does not accept it as evidence in support of Mr. Tunney's prima facie case.[5]

Turning to the evidence actually submitted and identified by Mr. Tunney, the court finds little to support Mr. Tunney's initial burden.  The only evidence submitted by Mr. Tunney is a document titled "Selected Statements of Cornell Tunney," which allegedly includes selected portions of Mr. Tunney's deposition testimony.  (Mills & Tunney Decl., Ex. 5.)  The statements contained in this document, which the court presumes are to be attributed to Mr. Tunney, do not address whether Mr. Tunney was performing satisfactory work or whether he was replaced by someone not in the protected class.  Additionally, Mr. Tunney points to the selected portion of his deposition transcript submitted by Obayashi in support of its motion for summary judgment.  (Mills & Tunney Mot. at 3 (citing Johnston Decl., Ex. 14).)  He appears to believe that this brief excerpt from his deposition transcript makes it clear that he had previous tunnel experience.  (*Id*.)  A review of the deposition transcript, however, provides no testimony regarding Mr. Tunney's previous tunnel experience, although it does contain Mr. Tunney's testimony that he had no experience spraying shotcrete in tunnels.  (Johnston Decl., Ex. 14.)  The court agrees with Mr. Tunney

---

[5] Moreover, even if supported in the record and even when viewed in the light most favorable to Mr. Tunney, the argument would not satisfy Mr. Tunney's burden in demonstrating that he was performing satisfactory work in the face of Mr. Tunney's accompanying concession that he had no experience with the equipment used in the project.

ORDER – 14

that the deposition transcript suggests he had more to say; plainly, Obayashi has provided only a bare sliver of Mr. Tunney's deposition testimony. Nonetheless, the burden rests with Mr. Tunney to present evidence in support of a prima facie case. The court cannot speculate as to what Mr. Tunney may or may not have testified to at his deposition. Accordingly, viewing the evidence in the light most favorable to Mr. Tunney, the court concludes that Mr. Tunney has not met his burden in establishing a prima facie case. Therefore, the court grants summary judgment in favor of Obayashi with respect to Mr. Tunney's discriminatory discharge claim.

2. Prima Facie Case - Disparate Treatment

Similarly, Mr. Tunney has not satisfied his burden in establishing a prima facie case of disparate treatment under the WLAD. As with Mr. Campbell and Mr. Mills, it is not entirely clear whether Mr. Tunney alleges such a claim. Viewing the evidence in the light most favorable to Mr. Tunney, the court concludes that he has presented no argument or evidence showing that Obayashi treated him differently in the terms and conditions of his employment. Therefore, the court grants summary judgment in favor of Obayashi with respect to Mr. Tunney's disparate treatment claim under the WLAD.

*ii. Mr. Tunney's Counter-Motion for Summary Judgment*

In his counter-motion, Mr. Tunney requests that the court grant summary judgment in his favor. (Mills & Tunney Mot. at 1, 11.) Mr. Tunney presents no substantive legal or factual analysis in support of this request. As discussed above, the court finds that Mr. Tunney has not established a prima facie case of discrimination. Therefore, the court denies Mr. Tunney's counter-motion for summary judgment.

ORDER – 15

## IV. CONCLUSION

For the reasons stated above, the court GRANTS Obayashi's motion for summary judgment (Dkt. # 92), DENIES Mr. Campbell's counter-motion for summary judgment (Dkt. # 114), and DENIES Mr. Mills and Mr. Tunney's counter-motion for summary judgment (Dkt. # 125).

Dated this 18th day of May, 2009.

JAMES L. ROBART
United States District Judge

ORDER – 16